UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANNA BOWER, BENJAMIN WITTES, <br><br> and <br><br> AMERICAN CIVIL LIBERTIES UNION, <br>    125 Broad Street, 18th Floor <br>    New York, NY 10004, <br><br>       *Plaintiffs*, <br><br> v. <br><br> U.S. SOCIAL SECURITY ADMINISTRATION, <br>    6401 Security Boulevard <br>    Baltimore, MD 21235, <br><br> and <br><br> U.S. CITIZENSHIP AND IMMIGRATION SERVICES, <br>    5900 Capital Gateway Dr. <br>    Camp Springs, MD 20588, <br><br>       *Defendants*. | Civil Action No. 1:25-cv-2713 |

**COMPLAINT**
**(Freedom of Information Act)**

    1.    Journalists Anna Bower and Benjamin Wittes, along with the American Civil Liberties Union ("ACLU") (collectively, "Plaintiffs"), bring this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel the expedited processing and disclosure of records relating to federal agencies' collection and use of millions of Americans' personal data for supposed voter list maintenance activities.

1

2. On March 25, 2025, President Trump issued an executive order directing, among other things, "the Department of Homeland Security, in coordination with the [Department of Government Efficiency (DOGE)][1] Administrator" to review state voter registration lists "alongside Federal immigration databases" and for the Commissioner of Social Security to take action "to make available the Social Security Number Verification Service, the Death Master File, and any other Federal databases containing relevant information." *See* Exec. Order No. 14,248, 90 Fed. Reg. 14,005 (Mar. 25, 2025).

3. On May 22, 2025, U.S. Citizenship and Immigration Services ("USCIS") issued a press release stating that it had "updated the Systematic Alien Verification for Entitlements (SAVE) program to ensure a single, reliable source for verifying immigration status and U.S. citizenship nationwide," purportedly enabling State and local authorities to "input Social Security numbers to help verify U.S. citizenship and prevent aliens from voting in American elections." U.S. Citizenship & Immigr. Servs., *USCIS Deploys Common Sense Tools to Verify Voters* (May 22, 2025), https://www.uscis.gov/newsroom/news-releases/uscis-deploys-common-sense-tools-to-verify-voters.

4. The SAVE program was "designed to help states verify the citizenship and immigration status of people applying for government benefits," and the Department of Homeland Security ("DHS") "also permits states to use it to help determine eligibility to vote in elections." Brennan Center for Justice, *Homeland Security's "SAVE" Program Exacerbates Risks to Voters* (July 21, 2025), https://www.brennancenter.org/our-work/research-reports/homeland-securitys-

---

[1] On January 20, 2025, President Trump issued an executive order renaming the United States Digital Service as the "United States DOGE Service (USDS)," with "DOGE" standing for "Department of Government Efficiency." Exec. Order No. 14,158, 90 Fed. Reg. 8441 (Jan. 20, 2025).

2

save-program-exacerbates-risks-voters. Though SAVE is often referred to as a "database,"[2] the SAVE program is "not itself a data repository"; rather, it "is a tool for querying various datasets" maintained by the federal government. *Id.*

5. Reporting has indicated that DOGE and other agencies made use of existing government data sources to modify the SAVE program and combine information about a person's immigration status, death records, and other personally identifiable information for use by the states related to voter list maintenance. This reporting and statements by state and federal officials have indicated that the U.S. DOGE Service ("USDS"), the DHS, and the Social Security Administration ("SSA") all contributed to the changes to the SAVE program and potentially to changes to other federal databases.[3] However, the details of those changes, such as the particular programs and databases that have been altered, the ways they have been altered, and the nature and extent of any use and sharing of individuals' personal information by the federal agencies entrusted with that information, have all been kept secret.

6. On the heels of these secretive changes to federal programs and databases, the Department of Justice has issued sweeping requests to states regarding their list maintenance

---

[2] *See, e.g.*, U.S. Dep't of Homeland Security, *DHS, USCIS, DOGE Overhaul Systematic Alien Verification for Entitlements Database* (Apr. 22, 2025), https://www.dhs.gov/news/2025/04/22/dhs-uscis-doge-overhaul-systematic-alien-verification-entitlements-database.

[3] *See, e.g.*, Madison Remrey, *Louisiana becomes first state to use DOGE voter maintenance database*, KPLC (May 21, 2025), https://www.kplctv.com/2025/05/21/louisiana-becomes-first-state-use-doge-voter-maintenance-database/; Jude Joffe-Block & Miles Parks, *The Trump administration is building a national citizenship data system*, Nat'l Public Radio (June 29, 2025), https://www.npr.org/2025/06/29/nx-s1-5409608/citizenship-trump-privacy-voting-database; U.S. Dep't of Homeland Sec., *DHS, USCIS, DOGE Overhaul Systematic Alien Verification for Entitlements Database* (Apr. 22, 2025), https://www.dhs.gov/news/2025/04/22/dhs-uscis-doge-overhaul-systematic-alien-verification-entitlements-database.

3

procedures, heightening the urgency for public understanding of the sweeping changes to federal databases containing personally identifiable information.[4]

7.  Multiple state election officials have also indicated that they are making use of the updated SAVE program and potentially other federal databases.

8.  On June 23, 2025, in an effort to obtain information about this government activity, Plaintiffs submitted FOIA requests (the "Requests") regarding the SAVE program, changes made to this and/or other federal databases, and communications by DHS, USCIS, SSA, and USDS both to state elections officials and to a group of private activists called the Election Integrity Network. Plaintiffs submitted a Request to each of DHS, USCIS, SSA, and USDS that same day. The Requests as sent to USCIS and SSA are appended to this Complaint as Exhibits A and B.

9.  Plaintiffs requested expedited processing on the ground that there was an "urgency to inform the public concerning actual or alleged Federal Government activity" and the Requests were "made by a person primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E)(v)(II). Plaintiffs also requested waiver and limitation of search, processing, and duplication fees.

10. DHS responded to Plaintiffs' Request on July 14, 2025, indicating that due to the subject matter of the Request it was being sent to the FOIA officer at USCIS, even though the Plaintiffs had already separately sent the Request to USCIS on June 23, 2025. DHS has not otherwise responded to Plaintiffs' request for expedited processing and has not released any records responsive to the Request.

---

[4] *See, e.g.*, Miles Parks & Jude Joffe-Block, *Trump's DOJ makes its most sweeping demand for election data yet*, Nat'l Public Radio (June 11, 2025), https://www.npr.org/2025/06/11/nx-s1-5426097/trump-justice-department-voter-data-colorado.

4

11. To date, USCIS has not responded to Plaintiffs' request for expedited processing and has not released any records responsive to the Request.

12. To date, SSA has not responded to Plaintiffs' request for expedited processing and has not released any records responsive to the Request.

13. Plaintiffs now ask the Court for injunctive and other relief requiring Defendants to process the Requests on an expedited basis, including conducting a prompt and thorough search for responsive records and producing such records. Plaintiffs also seek an order enjoining Defendants from charging search, review, or duplication fees for the processing of the Requests.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

15. Venue lies in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

## PARTIES

16. Anna Bower is a Senior Editor at *Lawfare*, a non-profit, non-partisan media organization dedicated to legal news and analysis. At *Lawfare*, Ms. Bower's reporting focuses on issues related to democracy and the rule of law, election law, and election security.

17. Benjamin Wittes is editor in chief of *Lawfare*, which he co-founded in 2010. In his own writing, he covers a range of issues related to the intersection of law and national security. In particular, he has written extensively about constitutional and separation of powers issues in connection with a range of President Trump's executive orders and administrative actions in 2025.

18. The American Civil Liberties Union is a non-profit, 26 U.S.C. § 501(c)(4) membership organization that educates the public about the civil liberties implications of government policies and practices and pending and proposed state and federal legislation, provides

analysis of pending and proposed legislation and Executive Branch policies and practices, directly lobbies legislators and government officials, and mobilizes its members to communicate with elected and appointed officials. The ACLU is also committed to principles of transparency and accountability in government, and seeks to ensure that the American public is informed about the conduct of its government in matters that affect civil liberties and human rights. Obtaining information about governmental activity, analyzing that information, and widely publishing and disseminating it to the press and the public is a critical and substantial component of the ACLU's work. It is incorporated in the District of Columbia and has its principal place of business in New York City.

19. Defendant U.S. Social Security Administration is an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1). SSA has possession, custody, and control of the records that Plaintiffs seek.

20. Defendant U.S. Citizenship and Immigration Services is an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1). USCIS has possession, custody, and control of the records that Plaintiffs seek.

## FACTS

**Defendants' Changes to the SAVE Program**

21. On March 25, 2025, President Trump issued an executive order directing, among other things, "the Department of Homeland Security, in coordination with the DOGE Administrator" to review state voter registration lists "alongside Federal immigration databases" and for the Commissioner of Social Security to take action "to make available the Social Security Number Verification Service, the Death Master File, and any other Federal databases containing relevant information." *See* Exec. Order No. 14,248.

22. Following this executive order, Defendants began making changes to the SAVE program, which is administered by USCIS, to incorporate sensitive information gleaned from various federal data sources, apparently now including the SSA.

23. Defendant SSA controls sensitive personal and financial data for millions of Americans, including Social Security numbers, drivers' license numbers, home and work addresses, bank and credit card information, tax information, income and work history, birth and marriage certificates, and medical, mental health, and hospitalization records. It has data on everyone who has a Social Security number, everyone who has Medicare, and everyone who has applied for Supplemental Security Income.

24. Defendant USCIS also controls sensitive personal data, including detailed information about all naturalized citizens, permanent residents, asylum applicants, refugees, and other visa applicants.

25. On April 22, 2025, DHS announced that, in partnership with "USCIS and the Department of Government Efficiency (DOGE)," it had conducted "a comprehensive optimization of the Systematic Alien Verification for Entitlements (SAVE) database to ensure a single, reliable source for verifying non-citizen status nationwide." U.S. Dep't of Homeland Sec., *DHS, USCIS, DOGE Overhaul Systematic Alien Verification for Entitlements Database* (Apr. 22, 2025), https://www.dhs.gov/news/2025/04/22/dhs-uscis-doge-overhaul-systematic-alien-verification-entitlements-database.

26. On May 22, 2025, USCIS issued a press release stating that "U.S. Citizenship and Immigration Services updated the Systematic Alien Verification for Entitlements (SAVE) program to ensure a single, reliable source for verifying immigration status and U.S. citizenship nationwide. State and local authorities can input Social Security numbers to help verify U.S. citizenship and

prevent aliens from voting in American elections." U.S. Citizenship & Immigr. Servs., *USCIS Deploys Common Sense Tools to Verify Voters* (May 22, 2025), https://www.uscis.gov/newsroom/news-releases/uscis-deploys-common-sense-tools-to-verify-voters.

27. Before Defendants made these changes to the SAVE program, the United States had never before created a comprehensive "searchable national citizenship data system," open to access by literally thousands of federal, state, and local officials. Jude Joffe-Block & Miles Parks, *The Trump administration is building a national citizenship data system*, Nat'l Public Radio (June 29, 2025), https://www.npr.org/2025/06/29/nx-s1-5409608/citizenship-trump-privacy-voting-database.

28. These reported database changes do not appear to have been accompanied by any "update to the 'system of records notice' (usually known as a SORN) that governs federal agency records on individuals under the Privacy Act of 1974." Justin Levitt, *USCIS updates SAVE immigration database to be queried with Social Security numbers*, Election Law Blog (May 26, 2025), https://electionlawblog.org/?p=150026. Nor was any opportunity to comment provided prior to the implementation of these changes. *Id.*

29. Despite Defendants' apparent failure to apprise the public of its changes via a system of records notice or any other form of notice or opportunity to comment, reporting has indicated that USCIS employee David Jennings, who oversees the SAVE program, has briefed the so-called Election Integrity Network, "an election denial activist network,"[5] on the tool and the recent changes. Jude Joffe-Block & Miles Parks, *The Trump administration is building a national*

---

[5] George Chidi & Sam Levine, *Republican who refused to certify Georgia primary a member of election denialist group*, The Guardian (June 4, 2024), https://www.theguardian.com/us-news/article/2024/jun/04/republican-julie-adams-georgia-election-integrity-network.

*citizenship data system*, Nat'l Public Radio (June 29, 2025), https://www.npr.org/2025/06/29/nx-s1-5409608/citizenship-trump-privacy-voting-database.

30. When groups that work to protect the right to vote requested that USCIS provide the same briefing to them, their request was rebuffed.

31. Federal, state, territorial, tribal, and local government agencies may make use of the SAVE program once they enter a memorandum of understanding with USCIS.

32. Over 1,200 agencies have access to the SAVE program.

**Statutory Framework**

33. Under FOIA, normally an agency must determine within twenty days after receiving a FOIA request whether to comply with the request. 5 U.S.C. § 552(a)(6)(A)(i). The agency must immediately notify the requester of the determination. *Id*. An agency must also normally "make a determination with respect to any appeal within twenty days." *Id*. § 552(a)(6)(A)(ii).

34. When a requester seeks expedited processing of the request, the agency's "determination of whether to provide expedited processing shall be made, and notice of the determination shall be provided to the person making the request, within 10 days after the date of the request." *Id*. § 552(a)(6)(E)(ii)(I). FOIA also requires "expeditious consideration of administrative appeals of such determinations of whether to provide expedited processing." *Id*. § 552(a)(6)(E)(ii)(II).

35. FOIA requires agencies to provide expedited processing when the requester "demonstrates a compelling need." *Id*. § 552(a)(6)(E)(i). FOIA defines "compelling need" to include an "urgency to inform the public concerning actual or alleged Federal Government

9

activity" when the request is "made by a person primarily engaged in disseminating information." *Id*. § 552(a)(6)(E)(v)(II).

36. When expedited processing is granted, the agency shall process records "as soon as practicable." *Id*. § 552(a)(6)(E)(iii).

37. FOIA provides for waiver of document search, review, and duplication fees when disclosure of the requested records is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *Id*. § 552(a)(4)(A)(iii). FOIA also provides for a waiver of search fees when the requester is a "representative of the news media" and the records are not sought for commercial use. *Id*. § 552(a)(4)(A)(ii)(II).

38. Additionally, if an agency "has failed to comply with any time limit" under 5 U.S.C. § 552(a)(6), the agency "shall not assess any search fees." *Id*. § 552(a)(4)(A)(viii)(I). If the request is made by "a representative of the news media" and the records "are not sought for commercial use," then the agency also cannot charge duplication fees. *Id*. This provision applies even when an agency may otherwise cite a separate statute that authorizes fees. *Shapiro v. U.S. Soc. Sec. Admin.*, 525 F. Supp. 3d 528, 541–42 (D. Vt. 2021).

39. If an agency "fails to comply with the applicable time limit provisions," a requester "shall be deemed to have exhausted his administrative remedies." *Id*. § 552(a)(6)(C)(i).

**Plaintiffs' FOIA Requests**

40. On June 23, 2025, Plaintiffs submitted their Requests to four agencies, including Defendants, seeking information related to the SAVE program and other federal databases.

41. The Request to USCIS sought "records for the period beginning at noon Eastern Standard Time on January 20, 2025—including but not limited to written communications

(including but not limited to messages sent via email, SMS message, iMessage, Slack, Microsoft Teams, WhatsApp, Signal, or other platforms) and memoranda—concerning or referencing:

(1) Any changes made to the SAVE database since January 20, 2025, including but not limited to the addition of any categories of information, the ability to query the database by anything other than an Alien number, and the ability to query the database for more than one record at a time;

(2) Any federal agencies that were authorized or permitted to access or use data maintained by the federal government to make changes to the SAVE database;

(3) Any specific federal employees or contractors who were authorized or permitted to access or use data maintained by the federal government to make changes to the SAVE database;

(4) Any steps taken to comply with Section 2 of Executive Order No. 14,248 (Mar. 25, 2025);

(5) Any activity related to the updates described in USCIS Press Release: U.S. Citizenship & Immigration Servs., USCIS Deploys Common Sense Tools to Verify Voters (May 22, 2025), https://www.uscis.gov/newsroom/news-releases/uscis-deploys-common-sense-tools-to-verify-voters;

(6) Any communications with other federal agencies regarding the compilation of data that can be used for voter roll list maintenance;

(7) Any contact with an official of a state government, including but not limited to Florida, Iowa, Louisiana, Mississippi, Ohio, and Texas, regarding any data that can be used for voter roll list maintenance or is otherwise related to voter roll list maintenance;

(8) Any communications with members or representatives of the Election Integrity Network, including but not limited to Cleta Mitchell.

Ex. A at 4.

42. The Request to SSA sought "records for the period beginning at noon Eastern Standard Time on January 20, 2025—including but not limited to written communications (including but not limited to messages sent via email, SMS message, iMessage, Slack, Microsoft Teams, WhatsApp, Signal, or other platforms) and memoranda—concerning or referencing:

(1) Any federal agencies other than the SSA that were authorized or permitted to access or use data maintained by the SSA to make updates to the SAVE database or otherwise in relation to voter roll list maintenance;

11

(2) Any specific federal employees or contractors who were authorized or permitted to access or use data maintained by the SSA to make updates to the SAVE database or otherwise in relation to voter roll list maintenance;

(3) Any steps taken to comply with Section 3 of Executive Order No. 14,248 (Mar. 25, 2025).

(4) Any changes made to the SAVE database since January 20, 2025, including combining or matching data maintained by the SSA with that maintained in the SAVE database;

(5) Any activity related to the updates described in USCIS Press Release: U.S. Citizenship & Immigration Servs., USCIS Deploys Common Sense Tools to Verify Voters (May 22, 2025), https://www.uscis.gov/newsroom/newsreleases/ uscis-deploys-common-sense-tools-to-verify-voters;

(6) Any communications with other federal agencies regarding the compilation of data that can be used for voter roll list maintenance;

(7) Any contact with an official of a state government, including but not limited to Florida, Iowa, Louisiana, Mississippi, Ohio, and Texas, regarding any data that can be used for voter roll list maintenance or is otherwise related to voter roll list maintenance;

(8) Any communications with members or representatives of the Election Integrity Network, including but not limited to Cleta Mitchell.

Ex. B at 4.

43. The Requests sought expedited processing on the grounds that there was "a 'compelling need'" for the records, "because the information requested is 'urgen[tly]' needed by an organization primarily engaged in disseminating information 'to inform the public concerning actual or alleged Federal Government activity.'" Ex. A at 5 (quoting 5 U.S.C. § 552(a)(6)(E)(v)(II)).

44. The Requests averred that, as journalists, Plaintiffs Bower and Wittes are "primarily engaged in disseminating information" within the meaning of FOIA and corresponding agency regulations. Ex. A at 5. It explained that "'Courts regularly find that reporters and members of the media qualify' for expedited processing under 5 U.S.C. § 552(a)(6)(E)." *Id.* at 7 (quoting *Landmark Legal Found. v. E.P.A.*, 910 F. Supp. 2d 270, 275 (D.D.C. 2012)).

12

45. The Requests further explained that the ACLU is an organization "primarily engaged in disseminating information" within the meaning of FOIA and corresponding agency regulations because inherent to the ACLU's core mission and activities is the dissemination of information to the public, and obtaining information about government activities, analyzing that information, and widely publishing and disseminating it to the press and public are critical and substantial components of the ACLU's work. Ex. A at 7. The ACLU regularly publishes magazine issues, press releases, reports, blog posts, videos, podcasts, and other multimedia projects. *Id*. at 7–9. The ACLU website also includes many features on information obtained through FOIA. *Id*. at 8. The Requests explained that these various efforts to disseminate information to the public are not incidental to some distinct primary activity: they reflect and advance the ACLU's core mission and are consistent with the ACLU's largest expenses. *Id.* at 9. Two of the ACLU's largest program services revolve around the dissemination of information to the public. *Id.* First, the ACLU provides funding to its affiliates across the country to ensure that projects and initiatives that are of particular local and national significance are sufficiently supported to reach the public. *Id.* Second, the ACLU provides direct education, including through the means described above, to provide its approximately 1 million followers and members of the public with information about a wide range of civil liberties issues. *Id.*

46. The Requests further explained that there is an "urgent[] need[] to inform the public about actual or alleged government activity" because the records sought relate to a matter of widespread and exceptional media and public interest, and non-federal actors had indicated that they were already putting the first-of-its-kind database to use. *Id.* at 9–10. The urgency and importance of the Requests were further "enhanced in light of the statements made by those entrusted with some of the most sensitive, personal records at issue in the Request[s] about their

13

cooperation with USDS outside of ordinary processes and chains of command," *id.*, including those of the then-Acting Commissioner of Defendant SSA.

47. The Requests sought a waiver and limitation of fees on the grounds that disclosure of the requested records is in the public interest, as the disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government" and "not primarily in the commercial interest of the requester." *Id*. at 11–12 (quoting 5 U.S.C. § 552(a)(4)(A)(iii)) (internal quotation marks omitted). The records sought relate to widespread access to sensitive data held by the federal government, compiled as one massive searchable database of all U.S. citizens and immigrants, something that had never before occurred in this nation's history. And because the revised SAVE program had already been shared with and is in use by states, this means the use of this sensitive data (and the consequent impact on registered voters) was imminent if not already ongoing. *Id.* The Requests also sought a waiver and limitation of fees on the grounds that Plaintiffs are representatives of the news media. As journalists, Plaintiffs Bower and Wittes are definitionally representatives of the news media, and the ACLU is a representative of the news media because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." *Id*. at 12–13 (internal citations and quotation marks omitted).

48. The Requests further explained that the records requested "are not sought for commercial use and the Requesters plan to disseminate the information disclosed as a result of [each] Request to the public at no cost." *Id.* at 9.

14

**Defendants' Responses**

49.     In a June 23, 2025 email, Defendant SSA acknowledged receipt of Plaintiffs' Request, and indicated that FOIA requests are centrally processed within the Office of Privacy and Disclosure.

50.     Since June 23, 2025, Plaintiffs have received no communication from Defendant SSA regarding the Request.

51.     Defendant SSA failed to respond to Plaintiffs' request for expedited processing within 10 days, and more than twenty days have elapsed since Plaintiffs filed the Requests. Plaintiffs have therefore exhausted all administrative remedies. *See* 5 U.S.C. § 552(a)(6)(C)(i).

52.     Defendant USCIS has never sent a communication acknowledging receipt of Plaintiffs' Request, but as it was submitted through the USCIS FOIA Portal, Plaintiffs can see that the Request remains in "received" status, with an estimated completion date of September 26, 2025. The estimated completion date has shifted further back in time at least five times when viewing the Request in the FOIA Portal.

53.     Plaintiffs have received no communications from Defendant USCIS regarding the Request.

54.     Defendant USCIS failed to respond to Plaintiffs' request for expedited processing within 10 days, and more than twenty days have elapsed since Plaintiffs filed the Requests. Plaintiffs have therefore exhausted all administrative remedies. *See* 5 U.S.C. § 552(a)(6)(C)(i).

**CLAIM FOR RELIEF**

55.     Defendants' failure to promptly make available the records sought by the Requests violates FOIA, 5 U.S.C. § 552(a)(3)(A), and Defendants' corresponding regulations.

56. Defendants' failure to make an adequate search for records responsive to the Requests violates FOIA, 5 U.S.C. § 552(a)(3)(C), (D), and Defendants' corresponding regulations.

57. Defendant SSA's failure to grant Plaintiffs' requests for a waiver of search, review, and duplication fees violates FOIA and SSA's corresponding regulations, 5 U.S.C. § 552(a)(4), (6); 20 C.F.R. § 402.85; and Section 1106(c) of the Social Security Act, 42 U.S.C. § 1306(c).

58. Defendant SSA's failure to grant Plaintiffs' request for a limitation of fees violates FOIA and SSA's corresponding regulations, 5 U.S.C. § 552(a)(4), (6); 20 C.F.R. § 402.85, and Section 1106(c) of the Social Security Act, 42 U.S.C. § 1306(c).

59. Defendant USCIS's failure to grant a fee waiver or limitation of fees violates FOIA and USCIS's corresponding regulations, 5 U.S.C. § 552(a)(4); 6 C.F.R. § 5.11(d), (k).

60. Defendants' failure to comply with time limits under FOIA bars Defendants from charging search or duplication fees. 5 U.S.C. § 552(a)(4)(A)(viii).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

(A) Order Defendants SSA and USCIS to grant Plaintiffs' request for expedited processing, to process Plaintiffs' Requests on an expedited basis, and to immediately release to Plaintiffs the records sought in the Requests;

(B) Enjoin Defendants SSA and USCIS from charging Plaintiffs search, review, or duplication fees for the processing of the Requests;

(C) Award Plaintiffs costs and reasonable attorneys' fees incurred in this action; and

(D) Grant such other relief as the Court deems just and proper.

Dated: August 18, 2025                           Respectfully submitted,

/s/ Megan C. Keenan
Megan C. Keenan (D.C. Bar. No. 1672508)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street NW, 6th Floor
Washington, DC 20005
(347) 714-1530
mkeenan@aclu.org

Theresa J. Lee*
Sophia Lin Lakin*
Ari J. Savitzky* (D.C. Bar. No. 1032560 (inactive))
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
tlee@aclu.org
slakin@aclu.org
asavitzky@aclu.org

*Attorneys for Plaintiffs*

*motion for admission *pro hac vice* forthcoming