## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| ANNA BOWER, BENJAMIN WITTES, and AMERICAN CIVIL LIBERTIES UNION, | |
| *Plaintiffs*, | No. 1:25-cv-2713 |
| v. | **ORAL ARGUMENT REQUESTED** |
| UNITED STATES SOCIAL SECURITY ADMINISTRATION, and UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, | |
| *Defendants*. | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S
## MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

   I.    DOGE, SSA, and USCIS Activity ......................................................................... 2

   II.   Procedural History ................................................................................................. 6

      A.   Plaintiffs' FOIA Requests ................................................................................ 6

      B.   Agency Responses ........................................................................................... 8

LEGAL STANDARD ......................................................................................................... 9

ARGUMENT ...................................................................................................................... 9

   I.    Plaintiffs Are Likely to Succeed on the Merits ..................................................... 9

      A.   Plaintiffs Bower and Wittes are primarily engaged in the dissemination of information.......................................................................................................... 10

      B.   There is urgency to inform the public regarding changes to the SAVE program and materials being made accessible to state and local entities.................................... 11

   II.   Plaintiffs Will Suffer Irreparable Harm Absent Preliminary Relief................................. 12

   III.   The Remaining Factors Strongly Favor Plaintiffs ......................................... 14

   IV.   This Court Should Waive the Bond Requirement...................................................... 16

CONCLUSION .................................................................................................................. 16

# TABLE OF AUTHORITIES

## Cases

*Aamer v. Obama*,
    742 F.3d 1023 (D.C. Cir. 2014). ........................................................................... 9

*ACLU v. U.S. Dep't of Just.*,
    321 F. Supp. 2d 24 (D.D.C. 2004) .................................................................... 7, 12

*Al-Fayed v. C.I.A.*,
    254 F.3d 300 (D.C. Cir. 2001) ........................................................................ 7, 11

*Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.*,
    498 F. Supp. 3d 87 (D.D.C. 2020) ........................................................ 12, 14, 16

*Chaplaincy of Full Gospel Churches v. England*,
    454 F.3d 290 (D.C. Cir. 2006) ............................................................................. 9

*Citizens for Resp. & Ethics in Wash. v. U.S. DOGE Serv.*,
    769 F. Supp. 3d 8 (D.D.C. 2025) ............................................................ 2, 12, 14

*Ctr. for Pub. Integrity v. U.S. Dep't of Def.*,
    411 F. Supp. 3d 5 (D.D.C. 2019) .................................................................. 13, 15

*Ctr. to Prevent Handgun Violence v. U.S. Dep't of Treasury*,
    49 F. Supp. 2d 3 (D.D.C. 1999). ........................................................................ 15

*DSE, Inc. v. United States*,
    169 F.3d 21 (D.C. Cir. 1999). ............................................................................ 16

*Dunlap v. Presidential Advisory Comm'n on Election Integrity*,
    286 F. Supp. 3d 96 (D.D.C. 2017) ..................................................................... 13

*Elec. Priv. Info. Ctr. v. Dep't of Just.*,
    416 F. Supp. 2d 30 (D.D.C. 2006) ..................................................................... 13

*Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*,
    636 F.2d 755 (D.C. Cir. 1980) ........................................................................... 16

*Hanson v. Dist. of Columbia*,
    120 F.4th 223 (D.C. Cir. 2024). ......................................................................... 15

*Heritage Found. v. U.S. Env't Prot. Agency*,
    No. CV 23-748 (JEB), 2023 WL 2954418 (D.D.C. Apr. 14, 2023)................... 7, 10

*Karem v. Trump*,
    960 F.3d 656 (D.C. Cir. 2020) ............................................................................. 9

*Landmark Legal Found. v. E.P.A.*,
    910 F. Supp. 2d 270 (D.D.C. 2012). .............................................................. 7, 10

*League of Women Voters of U.S. v. Newby,*
    838 F.3d 1 (D.C. Cir. 2016) ........................................................................ 12, 15

*Loving v. IRS,*
    917 F. Supp. 2d 67 (D.D.C. 2013). .................................................................... 15

*Luokung Tech. Corp. v. Dep't of Def.,*
    538 F. Supp. 3d 174 (D.D.C. 2021). .................................................................. 15

*Nat'l Archives & Records Admin. v. Favish,*
    541 U.S. 157 (2004)............................................................................................ 14

*NLRB v. Robbins Tire & Rubber Co.,*
    437 U.S. 214 (1978)............................................................................................ 15

*Progress v. Consumer Fin. Prot. Bureau,*
    No. CV 17-686 (CKK), 2017 WL 1750263 (D.D.C. May 4, 2017) ...................... 10

*Protect Democracy Project, Inc. v. U.S. Dep't of Def.,*
    263 F. Supp. 3d 293 (D.D.C. 2017) ................................................................... 12

*Protect Democracy Project, Inc. v. U.S. Dep't of Just.,*
    498 F. Supp. 3d 132 (D.D.C. 2020) .............................................................. 11, 12

*Pub. Invs. Arb. Bar Ass'n v. U.S. S.E.C.,*
    930 F. Supp. 2d 55, 60 (D.D.C. 2013) ................................................................. 9

*U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press,*
    489 U.S. 749 (1989)............................................................................................ 15

## Statutes

5 U.S.C. § 552........................................................................................................ 9

5 U.S.C. § 552(a)(4)(A)(iii) ................................................................................... 8

5 U.S.C. § 552(a)(6)(C)(i)...................................................................................... 9

5 U.S.C. § 552(a)(6)(E)......................................................................... 7, 9, 10, 11

5 U.S.C. § 552a ..................................................................................................... 5

## Other Authorities

85 Fed. Reg. 31798 (May 27, 2020) ....................................................................... 5

Alexandra Berzon et al., *Inside the Movement Behind Trump's Election Lies*, N.Y. Times (Oct.
    28, 2024). ....................................................................................................... 6, 14

Alexandra Berzon, *Activists File 'Bad-Faith' Ballot Challenges, Pennsylvania Officials Say*,
    N.Y. Times (Nov. 4, 2024). ............................................................................ 6, 14

American Oversight, *Behind Texas' Voter Citizenship Check Agreement with DHS* (July 22,
    2025). ............................................................................................................. 5, 13

Brennan Center for Just., *Homeland Security's "SAVE" Program Exacerbates Risks to Voters* (July 21, 2025). ................................................................................................... 3

Exec. Order No. 14,158, 90 Fed. Reg. 8441 (Jan. 20, 2025) .......................................... 2

Exec. Order No. 14,248, 90 Fed. Reg. 14,005 (Mar. 25, 2025) ...................................... 2

George Chidi & Sam Levine, *Republican Who Refused to Certify Georgia Primary a Member of Election Denialist Group*, The Guardian (June 4, 2024). ..................................................... 6, 14

Ind. Sec'y of State Diego Morales, *Indiana Secretary of State Diego Morales Signs Agreement with Department of Homeland Security to Identify Noncitizens on Indiana Voter Rolls* (July 7, 2025). ....................................................................................................................... 5

Johana Bhuiyan, *Trump Officials Create Searchable National Citizenship Database*, The Guardian (June 30, 2025). ....................................................................................... 13

Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National Citizenship Data System*, Nat'l Public Radio (June 29, 2025). .......................................... 4, 6, 13

Jude Joffe-Block, *Democratic Senators Raise Concerns About a New Trump Citizenship Data System*, Nat'l Public Radio (July 17, 2025). ............................................................ 13

Justin Levitt, *USCIS updates SAVE immigration database to be queried with Social Security numbers*, Election Law Blog (May 26, 2025). ............................................................ 5

Letter from Sen. E. Warren to L. Dudek (Mar. 2, 2025). ............................................... 6

U.S. Citizenship & Immigr. Servs., *USCIS Deploys Common Sense Tools to Verify Voters* (May 22, 2025). .......................................................................................................... 3, 4

U.S. Dep't of Homeland Security, *DHS, USCIS, DOGE Overhaul Systematic Alien Verification for Entitlements Database* (Apr. 22, 2025). ........................................................... 3, 4

U.S. Digit. Serv., *Our mission*, https://www.usds.gov/mission (last visited May 28, 2025). ......... 2

## INTRODUCTION

The United States has never had a searchable national citizenship registry. Congress has passed no law requiring one. Yet it appears that the Defendant agencies have now created one, by altering the Systematic Alien Verification for Entitlements (SAVE) program to permit it to draw upon sensitive personal data taken from various governmental departments. Defendants have done this without any public disclosures regarding their handling of Americans' personal data, without publishing notice in the Federal Register, without any oversight, and conceivably without concern for the highly sensitive nature of the personal information at issue. State and local entities are already making use of the newly compiled data. And Defendant agency U.S. Citizenship and Immigration Services (USCIS) has also reportedly provided private briefings about the SAVE program to favored non-governmental advocacy groups.

There is an urgent need for transparency about what these agencies are doing with millions of individuals' highly sensitive personal information, who has been granted access to this highly sensitive information, and what information has been swept up in this effort. Yet Plaintiffs Anna Bower, Benjamin Wittes, and the American Civil Liberties Union (ACLU) (collectively, Plaintiffs) have been stonewalled in their effort to seek such information. Plaintiffs thus seek expedited processing of their Freedom of Information Act (FOIA) requests (the Requests) for records relating to the SAVE program and related federal data sources which are being held out for use by state and local entities to purge voters from their registration rolls.

This Court should issue a preliminary injunction to end Defendants' stonewalling. It should order Defendants to grant Plaintiffs' request for expedited processing of the Requests and to fully process and produce all non-exempt records on an expedited basis. Plaintiffs meet the requirements for a preliminary injunction because they are likely to succeed in their request for expedited processing, they will suffer irreparable harm absent a preliminary injunction, and the balance of

1

the equities and the public interest weigh in favor of granting relief. This Court recently issued a preliminary injunction granting expediting processing of another FOIA request aimed at unprecedented changes to federal systems and programs. *See Citizens for Resp. & Ethics in Wash. v. U.S. DOGE Serv.*, 769 F. Supp. 3d 8, 20 (D.D.C. 2025) [hereinafter *CREW*]. The same relief is warranted here.

## BACKGROUND

### I.      DOGE, SSA, and USCIS Activity

On March 25, 2025, President Trump issued an executive order directing, among other things, "the Department of Homeland Security, in coordination with the DOGE Administrator"[1] to review state voter registration lists "alongside Federal immigration databases" and for the Commissioner of Social Security to take action "to make available the Social Security Number Verification Service, the Death Master File, and any other Federal databases containing relevant information." *See* Exec. Order No. 14,248, 90 Fed. Reg. 14,005 (Mar. 25, 2025).

Following this executive order, Defendants began making changes to the SAVE program, which USCIS administers. The SAVE program was "designed to help states verify the citizenship and immigration status of people applying for government benefits," and states are also permitted "to use it to help determine eligibility to vote in elections." Brennan Center for Just., *Homeland Security's "SAVE" Program Exacerbates Risks to Voters* (July 21, 2025),

---

[1] In August 2014, President Obama founded the U.S. Digital Service within the Office of Management and Budget, with the goal of "br[inging] together the best engineering, design, and government talent to change our government's approach to technology." U.S. Digit. Serv., *Our mission*, https://www.usds.gov/mission (last visited May 28, 2025). On January 20, 2025, President Trump issued an executive order renaming the United States Digital Service as the "United States DOGE Service (USDS)," with "DOGE" standing for "Department of Government Efficiency." Exec. Order No. 14,158, 90 Fed. Reg. 8441 (Jan. 20, 2025). Within the United States DOGE Service, President Trump established a temporary organization, "the U.S. DOGE Service Temporary Organization," pursuant to 5 U.S.C. § 3161. *Id.*

https://www.brennancenter.org/our-work/research-reports/homeland-securitys-save-program-
exacerbates-risks-voters. Though SAVE is often referred to as a "database,"[2] the SAVE program
is "not itself a data repository"; rather, it "is a tool for querying various datasets" maintained by
the federal government. *Id.* Following the executive order, Defendants modified the SAVE
program to enable it to query sensitive information gleaned from new federal data sources,
including sources maintained by the SSA. *See* U.S. Citizenship & Immigr. Servs., *USCIS Deploys
Common Sense Tools to Verify Voters* (May 22, 2025), https://www.uscis.gov/newsroom/news-
releases/uscis-deploys-common-sense-tools-to-verify-voters.

Defendant SSA controls sensitive personal and financial data, including Social Security
numbers, drivers' license numbers, home and work addresses, bank and credit card information,
tax information, income and work history, birth and marriage certificates, and medical, mental
health, and hospitalization records. It has data for everyone who has a Social Security number,
everyone who has Medicare, and everyone who has applied for Supplemental Security Income.
About 72.5 million people receive Social Security benefits, and hundreds of millions have a Social
Security number. In other words, the SSA controls sensitive personal data for virtually the entire
population of the United States. Defendant USCIS also controls sensitive personal data, including
detailed information about all naturalized citizens, permanent residents, asylum applicants,
refugees, and other visa applicants.

On April 22, 2025, the Department of Homeland Security ("DHS") announced that, in
partnership with "USCIS and the Department of Government Efficiency (DOGE)," it had
conducted "a comprehensive optimization of the Systematic Alien Verification for Entitlements

---

[2] *See, e.g.*, U.S. Dep't of Homeland Security, *DHS, USCIS, DOGE Overhaul Systematic Alien
Verification for Entitlements Database* (Apr. 22, 2025), https://www.dhs.gov/
news/2025/04/22/dhs-uscis-doge-overhaul-systematic-alien-verification-entitlements-database.

(SAVE) database to ensure a single, reliable source for verifying non-citizen status nationwide." U.S. Dep't of Homeland Security, *DHS, USCIS, DOGE Overhaul Systematic Alien Verification for Entitlements Database* (Apr. 22, 2025), https://www.dhs.gov/news/2025/04/22/dhs-uscis-doge-overhaul-systematic-alien-verification-entitlements-database. The press release did not detail what this "optimization" entailed.

On May 22, 2025, USCIS issued a press release stating that "U.S. Citizenship and Immigration Services updated the Systematic Alien Verification for Entitlements (SAVE) program to ensure a single, reliable source for verifying immigration status and U.S. citizenship nationwide. State and local authorities can input Social Security numbers to help verify U.S. citizenship and prevent aliens from voting in American elections." U.S. Citizenship & Immigr. Servs., *USCIS Deploys Common Sense Tools to Verify Voters* (May 22, 2025), https://www.uscis.gov/newsroom/news-releases/uscis-deploys-common-sense-tools-to-verify-voters. Again, the press release contained no details about what updates Defendants made to the SAVE program.

Prior to Defendants' changes to the SAVE program, the United States had never before created a comprehensive "searchable national citizenship data system," let alone one open to access by literally thousands of federal, state, and local officials. Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National Citizenship Data System*, Nat'l Public Radio (June 29, 2025), https://www.npr.org/2025/06/29/nx-s1-5409608/citizenship-trump-privacy-voting-database [hereinafter *National Citizenship Data System*]. Indeed, multiple state election officials have indicated that they are already making use of the updated SAVE program and potentially other federal databases, risking the purge of properly registered voters from the voter rolls. Ex. A to Declaration of Theresa J. Lee ("Lee Decl.") at 9–10.[3]

---

[3] *See, e.g.*, American Oversight, *Behind Texas' Voter Citizenship Check Agreement with DHS*

Defendants appear to have undertaken these novel changes to the SAVE program without abiding by ordinary processes and legal requirements. For example, the Privacy Act requires agencies to publish notice when they modify any group of "records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual" in the Federal Register, and to provide the public with an opportunity to comment on the proposed changes. 5 U.S.C. § 552a(a)(5); (e)(4), (11). USCIS has previously published updates to such systems of records notices (SORNs) upon making far more routine modifications to the SAVE program. *See, e.g.*, 85 Fed. Reg. 31798 (May 27, 2020), https://www.federalregister.gov/documents/2020/05/27/2020-11390/privacy-act-of-1974-system-of-records. Yet these major changes do not appear to have been accompanied by any update to the system of records notice. *See* Justin Levitt, *USCIS updates SAVE immigration database to be queried with Social Security numbers*, Election Law Blog (May 26, 2025), https://electionlawblog.org/?p=150026. Nor was any opportunity to comment provided prior to the implementation of these changes. *See id.*

Contemporaneous statements made by those entrusted with highly sensitive, personal records reinforce that Defendants took steps to cooperate with DOGE outside of ordinary processes and chains of command. For example, Leland Dudek, who served as Acting Commissioner of the

---

(July 22, 2025), https://americanoversight.org/behind-texas-voter-citizenship-check-agreement-with-dhs/; Ind. Sec'y of State Diego Morales, *Indiana Secretary of State Diego Morales Signs Agreement with Department of Homeland Security to Identify Noncitizens on Indiana Voter Rolls* (July 7, 2025), https://events.in.gov/event/indiana-secretary-of-state-diego-morales-signs-agreement-with-department-of-homeland-security-to-identify-noncitizens-on-indiana-voter-rolls; La. Sec'y of State (@Louisiana_sos), X (May 23, 2025 at 9:45am), https://x.com/louisiana_sos/status/1925911062727061970?s=46 (Louisiana Secretary of State announcing that "Louisiana is the first state to use the new @DOGE voter list maintenance database!"); Dep't of Gov't Efficiency (@DOGE), X (May 23, 2025 at 3:12pm), https://x.com/doge/status/1925993168652112308?s=46 (DOGE posting: "Great job by @Louisiana_sos, using the new (and free) federal SAVE database to ensure voter integrity.").

Social Security Administration during much of the period when changes to the SAVE program were being made, has "confess[ed]" that he has "bullied agency executives, shared executive contact information, and circumvented the chain of command to connect DOGE with the people who get stuff done." Letter from Sen. E. Warren to L. Dudek (Mar. 2, 2025), https://www.warren.senate.gov/imo/media/doc/letter_to_ssa_re_doge_data_access.pdf; *see also* Elon Musk (@elonmusk), X (Feb. 19, 2025 at 10:18pm), https://perma.cc/56BW-MUBB.

Despite Defendants' apparent failure to apprise the public of its changes via a system of records notice or any other form of notice or opportunity to comment, reporting has indicated that USCIS employee David Jennings, who oversees the SAVE program, has briefed the so-called Election Integrity Network—an "election denial activist network"[4] that has engaged in prior attempts to improperly disenfranchise voters through mass challenges to their eligibility[5]—on the tool and the recent changes. Joffe-Block & Parks, *National Citizenship Data System*. When groups that work to protect the right to vote requested that USCIS provide them with the same briefing, USCIS brushed them aside. Lee Decl. ¶¶ 13–14.

## II.    Procedural History

### A.  Plaintiffs' FOIA Requests

On June 23, 2025, Plaintiffs submitted their FOIA Requests to four agencies, including Defendants, seeking information related to the SAVE program, related federal databases, and the

---

[4] George Chidi & Sam Levine, *Republican who refused to certify Georgia primary a member of election denialist group*, The Guardian (June 4, 2024), https://www.theguardian.com/us-news/article/2024/jun/04/republican-julie-adams-georgia-election-integrity-network.

[5] Alexandra Berzon, *Activists File 'Bad-Faith' Ballot Challenges, Pennsylvania Officials Say*, N.Y. Times (Nov. 4, 2024), https://www.nytimes.com/2024/11/04/us/politics/pennsylvania-ballot-challenges.html; Alexandra Berzon et al., *Inside the Movement Behind Trump's Election Lies*, N.Y. Times (Oct. 28, 2024), https://www.nytimes.com/interactive/2024/10/28/us/politics/inside-the-movement-behind-trumps-election-lies.html.

government's decisions related to making such information accessible to thousands of state and local entities. Lee Decl. ¶¶ 7–9; Ex. A–B to Lee Decl.

The Requests sought expedited processing on the grounds that there was "a 'compelling need'" for the records, "because the information requested is 'urgen[tly]' needed by an organization primarily engaged in disseminating information 'to inform the public concerning actual or alleged Federal Government activity.'" Ex. A to Lee Decl. at 5 (quoting 5 U.S.C. § 552(a)(6)(E)(v)(II)). The Request explained that Plaintiffs Bower and Wittes are journalists at *Lawfare* who are "primarily engaged in disseminating information," underscoring that "'[c]ourts regularly find that reporters and members of the media qualify' for expedited processing under 5 U.S.C. § 552(a)(6)(E)." Ex. A to Lee Decl. at 7 (quoting *Landmark Legal Found. v. E.P.A.*, 910 F. Supp. 2d 270, 275 (D.D.C. 2012)).[6] The Requests further explained that there is "an urgent[] need[] to inform the public about actual or alleged government activity" because the records sought relate to a matter of widespread and exceptional media and public interest, and non-federal actors had indicated that they were already putting the first-of-its-kind program to use, at the risk of properly registered voters being purged from the voter rolls. Ex. A to Lee Decl. at 9–10. The urgency and importance of the Request were further "enhanced in light of the statements made by those entrusted with some of the most sensitive, personal records at issue in the Request about their

---

[6] Because Plaintiffs Bower and Wittes are so obviously "primarily engaged in disseminating information," for the purposes of this motion, Plaintiffs do not rely on the status of the ACLU as also being "primarily engaged in disseminating information" as detailed in the Requests, as only one requester needs to be so engaged in order to meet the statutory standard. *See Al-Fayed v. C.I.A.*, 254 F.3d 300, 309 (D.C. Cir. 2001) (as long as one of the plaintiffs qualifies as an entity "primarily engaged in disseminating information," the requirement is satisfied); *ACLU v. U.S. Dep't of Just.*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004); *Heritage Found. v. U.S. Env't Prot. Agency*, No. CV 23-748 (JEB), 2023 WL 2954418, at *3 (D.D.C. Apr. 14, 2023).

cooperation with USDS outside of ordinary processes and chains of command," *id.*, including those of the then-Acting Commissioner of Defendant SSA.

The Requests sought a waiver and limitation of fees on the grounds that disclosure of the requested records is in the public interest, as the disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government" and is "not primarily in the commercial interest of the requester." *Id*. at 11–12 (quoting 5 U.S.C. § 552(a)(4)(A)(iii)). In particular, the records sought related to Defendants' apparent creation of a massive and completely unprecedented searchable government database of all U.S. citizens and immigrants, containing highly sensitive personal information for millions of people, and the granting of widespread access to this sensitive, government-held data a wide array of local officials and actors. Indeed, the Requests explained, the need for the requested information was especially acute because the revised SAVE program had already been shared with state and local actors, and thus the use of this sensitive data (and the consequent impact on registered voters) was imminent if not already ongoing. *Id*.

> **B.    Agency Responses**

In a June 23, 2025 email, Defendant SSA acknowledged receipt of Plaintiffs' Request, and indicated that FOIA requests are centrally processed within the Office of Privacy and Disclosure. Ex. C to Lee Decl. Since that date, Plaintiffs have received no communication from Defendant SSA regarding the Request. Defendant USCIS has never sent a communication acknowledging receipt of Plaintiffs' Request, but as it was submitted through the USCIS FOIA Portal, Plaintiffs can see that the Request is in "received" status, rather than "in process." Lee Decl. ¶ 12; Ex. D to Lee Decl. The estimated completion date has shifted further back in time at least five times when viewing the request in the USCIS FOIA Portal. Lee Decl. ¶ 12. Each Defendant failed to respond to Plaintiffs' request for expedited processing within 10 days, and more than twenty days have

elapsed since Plaintiffs filed the Request. Plaintiffs have therefore exhausted all administrative remedies. *See* 5 U.S.C. § 552(a)(6)(C)(i).

## LEGAL STANDARD

To warrant a preliminary injunction, a plaintiff must show "(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially insure other interested parties, and (4) that the public interest would be furthered by the injunction." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006); *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). When the government is the opposing party, the balance of equities and public interest factors merge. *Karem v. Trump*, 960 F.3d 656, 668 (D.C. Cir. 2020) (citation omitted).

## ARGUMENT

### I.    Plaintiffs Are Likely to Succeed on the Merits

"Congress enacted the FOIA to promote transparency across the government." *Pub. Invs. Arb. Bar Ass'n v. U.S. S.E.C.*, 930 F. Supp. 2d 55, 60 (D.D.C. 2013), *aff'd sub nom. Pub. Invs. Arb. Bar Ass'n v. S.E.C.*, 771 F.3d 1 (D.C. Cir. 2014). FOIA establishes a scheme by which agencies must make their records available to the public and specifies timelines by which agencies must comply. *See generally* 5 U.S.C. § 552.

Under FOIA, agencies must provide for the expedited processing of a request where there is a "compelling need" or show that it qualifies under another ground set out by the relevant agency. 5 U.S.C. § 552(a)(6)(E)(i). As relevant here, the statute defines "compelling need" to mean, "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." *Id*. § 552(a)(6)(E)(v). Agencies must grant or deny a request for expedited processing within ten days, *id.* § 552(a)(6)(E)(ii)(I), and agencies must ensure for a swift process for appealing any denial, *id.*

§ 552(a)(6)(E)(ii)(II). Courts review denials of expedited processing "based on the record before the agency at the time of the determination." *Id*. § 552(a)(6)(E)(iii).

Plaintiffs are likely to succeed on the merits of their challenge to the agencies' failure to grant them expedited processing. As an initial matter, the failure to respond to the request within ten days is a blatant violation of FOIA's requirements. And Plaintiffs are also likely to show that their Request demonstrates a "compelling need" sufficient to require expedited processing. As journalists, Plaintiffs Bower and Wittes are "primarily engaged in disseminating information." And the information sought is of urgent interest to the public: It involves the creation of the first ever searchable national citizenship database, the nature and details of the newly accessible data including the types of sensitive personal information involved, the extent to which that data has been made accessible to numerous state and local actors, and the extent to which it is being used in states to target voters for removal from the voter rolls.

## A.    Plaintiffs Bower and Wittes are primarily engaged in the dissemination of information.

"Courts regularly find that reporters and members of the media qualify" for expedited processing under 5 U.S.C. § 552(a)(6)(E). *Landmark Legal Found. v. E.P.A*., 910 F. Supp. 2d 270, 275 (D.D.C. 2012); *see also, e.g.*, *Progress v. Consumer Fin. Prot. Bureau*, No. CV 17-686 (CKK), 2017 WL 1750263, at *4 (D.D.C. May 4, 2017) (noting that "courts in this Circuit and elsewhere have routinely held that media organizations and newspapers qualify under this category"); *Heritage Found. v. U.S. Env't Prot. Agency*, No. CV 23-748 (JEB), 2023 WL 2954418, at *3 (D.D.C. Apr. 14, 2023) (explaining that writer for Daily Signal, a news outlet, is primarily engaged in disseminating information). As journalists, Plaintiffs Bower and Wittes are the paradigmatic requesters who are "primarily engaged in the dissemination of information."

**B.      There is urgency to inform the public regarding changes to the SAVE program and materials being made accessible to state and local entities.**

The Request shows that there is an "urgency to inform the public concerning actual or alleged Federal Government activity," 5 U.S.C. § 552(a)(6)(E)(v). In the D.C. Circuit, courts consider the following factors in evaluating this question: "(1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." *Protect Democracy Project, Inc. v. U.S. Dep't of Just.*, 498 F. Supp. 3d 132, 139–40 (D.D.C. 2020) (quoting *Al-Fayed*, 254 F.3d at 310).

As to the first factor, the records sought by the Request relate to a matter of widespread and exceptional public interest. The records sought relate to novel and wide-ranging use of millions of persons' sensitive data held by the federal government, including its use for purposes of compiling a massive searchable database of all U.S. citizens and immigrants, something that has never before occurred in this nation's history. Heightening the public's need for information, this new database has already been shared with and is in use by state and local officials, which means there is now an imminent if not ongoing potential privacy threat due to the use of this sensitive data, and an imminent, if not ongoing, potential threat to voters due to the potential misuse of the data by local officials for voter list maintenance. Ex. A to Lee Decl. at 9–10.

Second, a delay in response "would compromise a significant recognized interest" because "stale information is of little value," *Protect Democracy Project*, 498 F. Supp. 3d at 139–40; indeed current information is especially pressing here as voters are actively at risk due to states' current use of the updated SAVE program without any check on how data matching is proceeding in this rushed update to a massive federal program. A substantial delay in the production of Defendants' records pertaining to the changes made to the SAVE program would prevent the public "'from

obtaining in a timely fashion information vital to the current and ongoing debate surrounding the legality of' a high-profile government action." *CREW*, 769 F. Supp. 3d at 27 (D.D.C. 2025) (quoting *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 299 (D.D.C. 2017)). And indeed the changes to the SAVE program and access provided thereto continues to be "the subject of a currently unfolding story." *Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.*, 498 F. Supp. 3d 87, 98 (D.D.C. 2020) (quoting *ACLU*, 321 F. Supp. 2d at 30).

Lastly, the Request clearly concerns federal government activity. Defendants SSA and USCIS are both federal government agencies, *cf. Protect Democracy Project*, 498 F. Supp. 3d at 140 (U.S. Postal Service and Department of Justice), and DOGE's operations are also federal government activity, *CREW*, 769 F. Supp. 3d at 25–26.

## II.    Plaintiffs Will Suffer Irreparable Harm Absent Preliminary Relief

To demonstrate irreparable harm, the party seeking a preliminary injunction must make two showings: "First, the harm must be certain and great, actual and not theoretical, and so imminent that there is a clear and present need for equitable relief to prevent irreparable harm. Second, the harm must be beyond remediation." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 7–8 (D.C. Cir. 2016) (cleaned up).

Plaintiffs have already suffered great and actual harm from Defendants' violations of FOIA. Plaintiffs' work in "obtaining information about government activities, analyzing that information, and widely publishing and disseminating it to the press and public," Ex. A to Lee Decl. at 7, frequently relies on information obtained through FOIA, especially when concerning government operations shrouded in secrecy, as is the case here. Without expedited processing of the Request, Plaintiffs' "ability to inform the public of ongoing proceedings of national importance" is hampered, *Ctr. for Pub. Integrity v. U.S. Dep't of Def.*, 411 F. Supp. 3d 5, 12 (D.D.C. 2019); *see also Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 286 F. Supp. 3d 96, 110

(D.D.C. 2017) ("District courts in this circuit have recognized that, where an obligation to disclose exists, plaintiffs may suffer irreparable harm if they are denied access to information that is highly relevant to an ongoing public debate."); *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 416 F. Supp. 2d 30, 41 (D.D.C. 2006) (noting that the plaintiff would suffer irreparable harm because it would be precluded "from obtaining in a timely fashion information vital to the current and ongoing debate surrounding the legality of the Administration's warrantless surveillance program"). The Requests are time sensitive due to the ongoing public debate regarding the federal government's use of personal information and because thousands of state and local entities are already accessing this newly devised system. *See supra* Argument I.B. The presence of an ongoing public debate and need for timely information can also be seen with events that have occurred since the Request— there continues to be active press coverage of the updated SAVE program, related federal databases, and making information available to numerous state and local entities.[7] And that press coverage generally raises far more questions than it can answer, given the paucity of public information about the changes actually made to the SAVE program. "*Timely* awareness is equally necessary because 'stale information is of little value.'" *CREW*, 769 F. Supp. 3d at 28 (citation omitted). Thus, "courts have concluded that a delay in processing of a FOIA request would cause irreparable harm" in FOIA cases involving "ongoing proceedings of national importance."

---

[7] *See, e.g.*, Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National Citizenship Data System*, Nat'l Public Radio (June 29, 2025), https://www.npr.org/2025/06/29/nx-s1-5409608/citizenship-trump-privacy-voting-database; Johana Bhuiyan, *Trump Officials Create Searchable National Citizenship Database*, The Guardian (June 30, 2025), https://www.theguardian.com/us-news/2025/jun/30/trump-citizenship-database; American Oversight, *Behind Texas′ Voter Citizenship Check Agreement with DHS* (July 22, 2025), https://americanoversight.org/behind-texas-voter-citizenship-check-agreement-with-dhs/; Jude Joffe-Block, *Democratic Senators Raise Concerns About a New Trump Citizenship Data System*, Nat'l Public Radio (July 17, 2025), https://www.npr.org/2025/07/16/nx-s1-5469815/democrats-citizenship-trump-privacy-voting-database.

*Brennan Ctr.*, 498 F. Supp. 3d at 101 (citation omitted); *CREW*, 769 F. Supp. 3d at 28. This is one of those cases.

Perhaps even more critically, Defendant USCIS has provided a private briefing on the SAVE program to the Election Integrity Network, a non-governmental "election denial activist network"[8] that has engaged in prior attempts to improperly disenfranchise voters through mass challenges to their eligibility.[9] At the same time, Defendant USCIS has rejected a request to provide an identical briefing to entities that advocate for the right of voters. Lee Decl. ¶¶ 13–14; Exs. E–F to Lee Decl. In so doing, the government is improperly playing favorites in terms of who is entitled to government transparency. This is exactly what FOIA seeks to avoid. That the government is providing information to groups who seek to remove voters from the rolls while denying it to those who seek to ensure voter access raises the specter of improper use of the SAVE program, heightening the importance of public understanding here. This is a perfect example of the fact that "a public informed about its government's actions is 'a structural necessity in a real democracy.'" *Brennan Ctr.*, 498 F. Supp. 3d at 101 (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)); *CREW*, 769 F. Supp. 3d at 28.

## III.    The Remaining Factors Strongly Favor Plaintiffs

The remaining two preliminary injunction factors—balance of equities and the public interest—weigh heavily in Plaintiffs' favor. In practice, a court analyzing these two factors together "must carefully balance the equities by weighing the harm to the moving party and the public if

---

[8] George Chidi & Sam Levine, *Republican Who Refused to Certify Georgia Primary a Member of Election Denialist Group*, The Guardian (June 4, 2024), https://www.theguardian.com/us-news/article/2024/jun/04/republican-julie-adams-georgia-election-integrity-network.

[9] Alexandra Berzon, *Activists File 'Bad-Faith' Ballot Challenges, Pennsylvania Officials Say*, N.Y. Times (Nov. 4, 2024), https://www.nytimes.com/2024/11/04/us/politics/pennsylvania-ballot-challenges.html; Alexandra Berzon et al., *Inside the Movement Behind Trump's Election Lies*, N.Y. Times (Oct. 28, 2024), https://www.nytimes.com/interactive/2024/10/28/us/politics/inside-the-movement-behind-trumps-election-lies.html.

there is no injunction against the harm to the government and the public if there is." *Hanson v. Dist. of Columbia*, 120 F.4th 223, 246 (D.C. Cir. 2024).

An injunction would facilitate "citizens' right to be informed about 'what their government is up to.'" *U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed," *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978), and "[i]n a functioning democracy, an informed electorate always inures to the public benefit," *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 15; *see also Ctr. to Prevent Handgun Violence v. U.S. Dep't of Treasury*, 49 F. Supp. 2d 3, 5 (D.D.C. 1999) ("There is public benefit in the release of information that adds to citizens' knowledge" about the activities of their government.). Likewise, "there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *Newby*, 838 F.3d at 12 (citation and quotation marks omitted); *see also Loving v. IRS*, 917 F. Supp. 2d 67, 81 (D.D.C. 2013). Granting the requested relief would serve these important interests.

In contrast, Defendants as government agencies by definition "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required." *Luokung Tech. Corp. v. Dep't of Def.*, 538 F. Supp. 3d 174, 195 (D.D.C. 2021) (citations and quotation marks omitted). Here, the government is stonewalling in direct violation of their statutory responsibilities under FOIA and will not be harmed merely by being required to follow the law which should have already compelled their compliance. And to the extent Defendants argue they are burdened by having "to process and produce these records quickly, and fac[ing] substantial backlogs," that burden "is outweighed by the [plaintiff]'s pressing need for the information and the public interest

in being informed on a matter . . . that is of 'the highest national concern.'" *Brennan Ctr.*, 498 F. Supp. 3d at 103.

## IV.    This Court Should Waive the Bond Requirement

Finally, the Court should waive the requirement for Plaintiffs to post a bond. *See* Fed. R. Civ. P. 65(c). Trial courts possess broad discretion under Federal Rule of Civil Procedure 65(c) in determining whether to require security. *See DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999). This includes discretion "to dispense with any security requirement whatsoever where the restraint will do the defendant 'no material damage.'" *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 759 (D.C. Cir. 1980) (citation omitted). Here, a preliminary injunction will not materially damage Defendants, as it would simply require it to fulfill its already existing obligations under FOIA.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court issue a preliminary injunction requiring Defendants to immediately process their FOIA request and produce all nonexempt records on an expedited basis. Plaintiffs additionally ask that, in light of the extraordinary public interest and the urgency to inform the public, the Court order Defendants to each process potentially responsive records at a rate of no less than 1,000 pages per month. Alternatively, Plaintiffs ask the Court to order the parties to confer about a reasonable processing schedule, and to submit a joint letter setting out the parties' positions for consideration of the Court.


Dated: August 21, 2025                      Respectfully submitted,

                                            /s/ Megan C. Keenan
                                            Megan C. Keenan (D.C. Bar. No. 1672508)
                                            AMERICAN CIVIL LIBERTIES UNION
                                                FOUNDATION
                                            915 15th Street NW, 6th Floor

Washington, DC 20005
(347) 714-1530
mkeenan@aclu.org

Theresa J. Lee*
Sophia Lin Lakin*
Ari J. Savitzky* (D.C. Bar. No. 1032560 (inactive))
AMERICAN CIVIL LIBERTIES UNION
       FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
tlee@aclu.org
slakin@aclu.org
asavitzky@aclu.org

*Attorneys for Plaintiffs*

*motion for admission *pro hac vice* forthcoming