# EXHIBIT B



**Theresa J. Lee**
Senior Staff Attorney
Voting Rights Project
ACLU National Legal Department

**FOIA Request / Expedited Processing Requested**

June 23, 2025

*Electronically submitted via FOIAXpress Public Access Link*

Social Security Administration
Office of Privacy and Disclosure
G-401 WHR
6401 Security Boulevard
Baltimore, Maryland 21235

**Re:    Request Under the Freedom of Information Act
         (Expedited Processing & Fee Waiver/Limitation Requested)**

To Whom It May Concern:

We submit this Freedom of Information Act ("FOIA") request (the "Request") for records pertaining to access to sensitive agency records and use of data across federal agencies with respect to information purported to be used for voter list maintenance by the Social Security Administration behalf of the American Civil Liberties Union, the American Civil Liberties Union Foundation (together, the "ACLU")[1], and journalists Anna Bower and Benjamin Wittes (collectively, the "Requesters").

## I.    Background

In August 2014, President Obama founded the U.S. Digital Service within the Office of Management and Budget, with the goal of "br[inging] together the best engineering, design, and government talent to change our government's approach to technology." U.S. Digital Service, *Our mission*, https://www.usds.gov/mission (last visited May 28, 2025). On January 20, 2025, President Trump issued an executive order renaming the United States Digital Service as the "United States DOGE

---

[1] The American Civil Liberties Union Foundation is a 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, and educates the public about civil rights and civil liberties issues across the country. The American Civil Liberties Union is a separate non-profit, 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.



Service (USDS)," with "DOGE" standing for "Department of Government Efficiency." White House, *Establishing and Implementing the President's "Department of Government Efficiency"* (Jan. 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/establishing-and-implementing-the-presidents-department-of-government-efficiency/. Within the United States DOGE Service, President Trump established a temporary organization, "the U.S. DOGE Service Temporary Organization," pursuant to 5 U.S.C. § 3161. *Id.* For purposes of this Request, these entities are collectively referred to as "USDS."

On March 25, 2025, President Trump issued an executive order directing, among other things, "the Department of Homeland Security in coordination with the DOGE Administrator" to review state voter registration lists "alongside Federal immigration databases" and for the Commissioner of Social Security to take action "to make available the Social Security Number Verification Service, the Death Master File, and any other Federal databases containing relevant information." *See* Exec. Order No. 14,248 (Mar. 25, 2025).

On April 22, 2025, the Department of Homeland Security announced that, in partnership with "USCIS and the Department of Government Efficiency (DOGE)," it had conducted "a comprehensive optimization of the Systematic Alien Verification for Entitlements (SAVE) database to ensure a single, reliable source for verifying non-citizen status nationwide." U.S. Dep't of Homeland Security, DHS, USCIS, DOGE Overhaul Systematic Alien Verification for Entitlements Database (Apr. 22, 2025), https://www.dhs.gov/news/2025/04/22/dhs-uscis-doge-overhaul-systematic-alien-verification-entitlements-database.

On May 22, 2025, USCIS issued a press release stating that "U.S. Citizenship and Immigration Services updated the Systematic Alien Verification for Entitlements (SAVE) program to ensure a single, reliable source for verifying immigration status and U.S. citizenship nationwide. State and local authorities can input Social Security numbers to help verify U.S. citizenship and prevent aliens from voting in American elections." U.S. Citizenship & Immigration Servs., USCIS Deploys Common Sense Tools to Verify Voters (May 22, 2025), https://www.uscis.gov/newsroom/news-releases/uscis-deploys-common-sense-tools-to-verify-voters. Reporting has indicated that, USDS and other agencies made use of existing government data sources to modify the SAVE database to combine information about a person's immigration status, death records, and other personally identifiable information, and potentially

125 Broad Street, Floor 18, New York, NY 10004 | tlee@aclu.org | (212) 549-2500



other federal databases, for use by the states related to voter list maintenance.[2] This reporting and accompanying statements by state and federal officials have indicated that USDS, DHS, and the Social Security Administration all contributed to the changes to SAVE database and potentially other federal databases.[3]

Because many existing federal records are protected by federal laws and regulations, including the Privacy Act, the Health Information Portability and Accountability Act (HIPAA) and the HIPAA Privacy Rule, the E-Government Act of 2002, including the Federal Information Security Management Act and the Confidential Information Protection and Statistical Efficiency Act, taxpayer privacy laws including 26 U.S.C § 6103, and other provisions, serious concerns have arisen about their use. These reported database changes do not appear to have been accompanied by any "update to the 'system of records notice' (usually known as a SORN) that governs federal agency records on individuals under the Privacy Act of 1974, and an opportunity for comment." Justin Levitt, USCIS updates SAVE immigration database to be queried with Social Security numbers, Election Law Blog (May 26, 2025), https://electionlawblog.org/?p=150026.

Requesters seek the below requested records to provide the American public with information concerning the use of their data that has been collected by the federal government for multiple different purposes and the manner in which such information is being shared and used by state or local officials or others.

---

[2] Madison Remrey, Louisiana becomes first state to use DOGE voter maintenance database, KPLC (May 21, 2025), https://www.kplctv.com/2025/05/21/louisiana-becomes-first-state-use-doge-voter-maintenance-database/.

[3] Id. (Louisiana Secretary of State met with "White House staff, DOGE, U.S. Citizenship and Immigration Services, and the Social Security Administration to offer feedback on the new voter maintenance database."); see also @Louisiana_sos, X (May 23, 2025 at 9:45am), https://x.com/louisiana_sos/status/1925911062727061970?s=46 (Louisiana Secretary of State announcing that "Louisiana is the first state to use the new @DOGE voter list maintenance database!"); @Louisiana_sos, X (May 23, 2025 at 9:46am), (Louisiana Secretary of State thanking @realDonaldTrump, @DHSgov, @USCIS, @SocialSecurity, and @DOGE for working quickly to make this vital information available in a cost-free, easy-to-use format!"); @DOGE, X (May 23, 2025), https://x.com/doge/status/1925993168652112308?s=46 (DOGE posting: "Great job by @Louisiana_sos, using the new (and free) federal SAVE database to ensure voter integrity.").

125 Broad Street, Floor 18, New York, NY 10004 | tlee@aclu.org | (212) 549-2500



## II.    Requested Records

We seek the release of records for the period beginning at noon Eastern Standard Time on January 20, 2025—including but not limited to written communications (including but not limited to messages sent via email, SMS message, iMessage, Slack, Microsoft Teams, WhatsApp, Signal, or other platforms) and memoranda—concerning or referencing:

(1) Any federal agencies other than the SSA that were authorized or permitted to access or use data maintained by the SSA to make updates to the SAVE database or otherwise in relation to voter roll list maintenance;

(2) Any specific federal employees or contractors who were authorized or permitted to access or use data maintained by the SSA to make updates to the SAVE database or otherwise in relation to voter roll list maintenance;

(3) Any steps taken to comply with Section 3 of Executive Order No. 14,248 (Mar. 25, 2025).

(4) Any changes made to the SAVE database since January 20, 2025, including combining or matching data maintained by the SSA with that maintained in the SAVE database;

(5) Any activity related to the updates described in USCIS Press Release: U.S. Citizenship & Immigration Servs., USCIS Deploys Common Sense Tools to Verify Voters (May 22, 2025), https://www.uscis.gov/newsroom/news-releases/uscis-deploys-common-sense-tools-to-verify-voters;

(6) Any communications with other federal agencies regarding the compilation of data that can be used for voter roll list maintenance;

(7) Any contact with an official of a state government, including but not limited to Florida, Iowa, Louisiana, Mississippi, Ohio, and Texas, regarding any data that can be used for voter roll list maintenance or is otherwise related to voter roll list maintenance;

(8) Any communications with members or representatives of the Election Integrity Network, including but not limited to Cleta Mitchell.

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), we request that responsive electronic records be provided electronically in their native file format, to

**ACLU**

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

the extent possible. Alternatively, we request that the records be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and that the records be provided in separate, Bates-stamped files.

## III.    Application for Expedited Processing

We request expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and the Agency's regulations. There is a "compelling need" for these records, as defined in the statute, because the information requested is "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

*1. Ms. Bower, Mr. Wittes, and the ACLU are primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

Anna Bower is a Senior Editor at *Lawfare*,[4] a non-profit, non-partisan media organization dedicated to legal news and analysis. At *Lawfare*, Ms. Bower's reporting focuses on issues related to democracy and the rule of law, election law, and election security. In 2023, for example, she penned an exhaustive account of the 2021 voting data breach in Coffee County, Georgia.[5] Later, in a series of follow-up articles, she published the Georgia Bureau of Investigation's report on the breach,[6] critiqued the report's glaring omissions,[7] and published additional documents acquired by the GBI during its investigation.[8]

---

[4] https://www.lawfaremedia.org/contributors/abower

[5] Anna Bower, *What the Heck Happened in Coffee County, Georgia?*, Lawfare (Aug. 15, 2023), https://www.lawfaremedia.org/article/what-the-heck-happened-in-coffee-county-georgia.

[6] Anna Bower, *You Can Now Read the GBI's Coffee Co. Report in Full*, Lawfare (Nov. 3, 2023), https://www.lawfaremedia.org/article/you-can-now-read-the-gbi-s-coffee-co.-report-in-full.

[7] Anna Bower, *What the GBI Missed in Coffee County*, Lawfare (Nov. 28, 2023), https://www.lawfaremedia.org/article/what-the-gbi-missed-in-coffee-county.

[8] Anna Bower, *A New Player in Coffee County*, Lawfare (Dec. 2, 2023), https://www.lawfaremedia.org/article/what-else-the-gbi-missed-in-coffee-county.

125 Broad Street, Floor 18, New York, NY 10004 | tlee@aclu.org | (212) 549-2500



Ahead of the 2024 presidential election, Ms. Bower produced extensive reporting and legal analysis on election-related matters. For *Lawfare*[9] and the *Atlantic*,[10] she analyzed the Georgia State Election Board's controversial rule changes related to election "certification," or the process by which county elections officials aggregate election returns and attest to the accuracy of the results. With *Lawfare*'s Benjamin Wittes, she profiled David Clements,[11] a former professor who traveled from town to town across the country, trying to persuade local election officials to withhold certification of voting machines or election results.

In addition to her work on election law and election security issues, Ms. Bower reports on the United States DOGE Service and the avalanche of civil litigation spawned by its efforts to re-shape the federal government.[12] Her work in this area is focused on answering unresolved questions about DOGE's organizational structure,[13] chain of command, and access to sensitive systems or data.[14] In "On DOGE, Directives, and DOJ," she reported on DOGE's efforts to terminate the Justice Department's contracts with the Acacia Center for Justice, which provides legal services for non-citizens and unaccompanied minor children.[15] More recently, she chronicled the government's inconsistent public statements[16] about who really runs DOGE.[17]

---

[9] *See, e.g.*, Anna Bower, *Will Georgia's New Election Rules Allow Trump to Steal the Presidency?*, Lawfare (Sept. 23, 2024), https://www.lawfaremedia.org/article/will-georgia's-new-election-rules-allow-trump-to-steal-the-presidency.

[10] *See, e.g.*, Anna Bower, *Georgia's Election-Law Problems Aren't Legal Ones*, The Atlantic (Oct. 3, 2024), https://www.theatlantic.com/ideas/archive/2024/10/georgia-election-law-legal/680118/.

[11] Anna Bower & Benjamin Wittes, *David Clements: The Evangelist of Election Refusal*, Lawfare (Oct. 31, 2024), https://www.lawfaremedia.org/article/david-clements--the-evangelist-of-election-refusal.

[12] Anna Bower, *Advocacy Groups File Four Lawsuits Against Musk-Led DOGE*, Lawfare (Jan. 20, 2025), https://www.lawfaremedia.org/article/advocacy-groups-file-four-lawsuits-against-musk-led-doge.

[13] Anna Bower, *DOGE-ing Questions in Federal Court*, Lawfare (Feb. 7, 2025), https://www.lawfaremedia.org/article/doge-ing-questions-in-federal-court.

[14] *Id.*

[15] Anna Bower, *On DOGE, Directives, and DOJ*, Lawfare (Apr. 27, 2025), https://www.lawfaremedia.org/article/on-doge--directives--and-doj.

[16] Anna Bower, *The WITAOD Chronicles*, Lawfare (May 29, 2025), https://www.lawfaremedia.org/article/the-witaod-chronicles.

[17] Anna Bower, *Who Is Running the U.S. DOGE Service?*, Lawfare (Feb. 25, 2025), https://www.lawfaremedia.org/article/who-is-running-the-u.s.-doge-service.

125 Broad Street, Floor 18, New York, NY 10004 | tlee@aclu.org | (212) 549-2500



Benjamin Wittes is editor in chief of *Lawfare*, which he co-founded in 2010. In his own writing, he covers a range of issues related to the intersection of law and national security. In particular, he has written extensively about constitutional and separation of powers issues in connection with a range of President Trump's executive orders and administrative actions in 2025.

In his editorial capacity, he supervises all of Lawfare's editorial policies and projects, including all of its work on DOGE, data privacy, elections and voting. In particular, he was the principal editor of Anna Bower's article on her search for the administrator of DOGE.

"Courts regularly find that reporters and members of the media qualify" for expedited processing under 5 U.S.C. § 552(a)(6)(E). *Landmark Legal Found. v. E.P.A.*, 910 F. Supp. 2d 270, 275 (D.D.C. 2012); *see also, e.g.*, *Progress v. Consumer Fin. Prot. Bureau*, No. CV 17-686 (CKK), 2017 WL 1750263, at *4 (D.D.C. May 4, 2017) (noting that "courts in this Circuit and elsewhere have routinely held that media organizations and newspapers qualify under this category"); *Heritage Found. v. U.S. Env't Prot. Agency*, No. CV 23-748 (JEB), 2023 WL 2954418, at *3 (D.D.C. Apr. 14, 2023) (explaining that writer for Daily Signal, a news outlet, is primarily engaged in disseminating information).

Likewise, the ACLU is "primarily engaged in disseminating information" within the meaning of the statute and regulations. 5 U.S.C. § 552(a)(6)(E)(v)(II). Inherent to the ACLU's core mission and activities is the dissemination of information to the public, and obtaining information about government activities, analyzing that information, and widely publishing and disseminating it to the press and public are critical and substantial components of the ACLU's work.[18]

To facilitate its goal of educating the public about civil liberties issues and government policies that implicate civil rights and liberties, the ACLU routinely publishes information about government conduct and civil liberties issues to millions of people through many media, including but not limited to: a magazine disseminated to more than one million donors; social media accounts with more than 6.6 million followers; an email distribution list with 4.8 million subscribers; a daily blog featuring

---

[18] Courts have found that organizations with similar missions that engage in information-dissemination activities similar to the ACLU are "primarily engaged in disseminating information." *See, e.g.*, *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *Elec. Privacy Info. Ctr. v. DOD*, 241 F. Supp. 2d 5, 11 (D.D.C. 2003).

125 Broad Street, Floor 18, New York, NY 10004 | tlee@aclu.org | (212) 549-2500



original editorial content[19]; videos, podcasts, and other interactive features[20]; and myriad reports, fact sheets, "know your rights" materials, educational brochures and pamphlets, and thousands of other documents distributed both on the ACLU's heavily visited website[21] and in hard copy. Through these media, the ACLU provides the public with educational material, recent news, analyses of relevant congressional or executive branch action, legal developments and case-related documents, government documents obtained through FOIA requests, and more.[22]

---

[19] https://www.aclu.org/blog

[20] https://www.aclu.org/multimedia

[21] *See generally* www.aclu.org; *see, e.g.*, ACLU, Bad Trip: Debunking the TSA's 'Behavior Detection' Program (2017), https://www.aclu.org/sites/default/files/field_document/dem17-tsa_detection_ report-v02.pdf; Carl Takei, ACLU-Obtained Emails Prove that the Federal Bureau of Prisons Covered Up Its Visit to the CIA's Torture Site (Nov. 22, 2016), https://www.aclu.org/blog/speak-freely/aclu-obtained-emails-prove-federal-bureau-prisons-covered-its-visit-cias-torture; Brett Max Kaufman, Details Abound in Drone 'Playbook' – Except for the Ones That Really Matter Most (Aug. 8, 2016), https://www.aclu.org/blog/speak-freely/details-abound-drone-playbook-except-ones-really-matter-most; ACLU, Leaving Girls Behind: An Analysis of Washington D.C.'s "Empowering Males of Color" Initiative (2016), https://www.aclu.org/report/leaving-girls-behind; Nathan Freed Wessler, ACLU-Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida (Feb. 22, 2015), https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida; Nathan Freed Wessler, FBI Documents Reveal New Information on Baltimore Surveillance Flights (Oct. 30, 2015), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights; Ashley Gorski, New NSA Documents Shine More Light into Black Box of Executive Order 12333 (Oct. 30, 2014), https://www.aclu.org/blog/new-nsa-documents-shine-more-light-black-box-executive-order-12333.

[22] *See, e.g.*, *ACLU v. ODNI*—FOIA Lawsuit Seeking Records About Government Surveillance Under the USA Freedom Act, ACLU Case Page, https://www.aclu.org/ cases/aclu-v-odni-foia-lawsuit-seeking-records-about-government-surveillance-under-usa-freedom-act; *ACLU v. DOJ*—FOIA Lawsuit Seeking Information on Federal Agencies' Surveillance of Social Media, ACLU Case Page, https://www.aclu.org/cases/aclu-v-doj-foia-lawsuit-seeking-information-federal-agencies-surveillance-social-media; *ACLU v. DOJ*—FOIA Case for Records Relating to Targeted Killing Law, Policy, and Casualties, ACLU Case Page, https://www.aclu.org/cases/aclu-v-doj-foia-case-records-relating-targeted-killing-law-policy-and-casualties; Executive Order 12,333—FOIA Lawsuit, ACLU Case Page, https://www.aclu.org/cases/executive-order-12333-foia-lawsuit; ACLU Motions Requesting Public Access to FISA Court Rulings on Government Surveillance, ACLU Case Page, https://www.aclu.org/cases/aclu-motions-requesting-public-access-fisa-court-rulings-



These various efforts to disseminate information to the public are not incidental to some distinct primary activity: they reflect and advance the ACLU's core mission and are consistent with the ACLU's largest expenses. Two of the ACLU's largest program services revolve around the dissemination of information to the public. First, the ACLU provides funding to its affiliates across the country to ensure that projects and initiatives that are of particular local and national significance are sufficiently supported to reach the public. Second, the ACLU provides direct education, including through the means described above, to provide its approximately 1 million followers and members of the public with information about a wide range of civil liberties issues.

The ACLU intends to analyze, publish, and/or distribute the information obtained through this FOIA request to the public via the ACLU website and/or other means available to us. The records requested are not sought for commercial use and the Requesters plan to disseminate the information disclosed as a result of this Request to the public at no cost.

2. *The records sought are urgently needed to inform the public about actual or alleged government activity.*

These records are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II). Specifically, they pertain to whether federal agencies are violating federal laws, regulations, or policies by providing extraordinary access to sensitive information that was gathered for other purposes than it is now being used. Likewise, non-federal government officials have indicated that they are already putting these sensitive federal data to use. USDS activities and the misuse of data held by the federal government are the subject of widespread and intense public controversy and media attention, with multiple new

government-surveillance; *ACLU v. DOJ*—FOIA Lawsuit Demanding OLC Opinion "Common Commercial Service Agreements, ACLU Case Page, https://www.aclu.org/cases/aclu-v-doj-foia-lawsuit-demanding-olc-opinion-common-commercial-service-agreements; FOIA Request for Justice Department Policy Memos on GPS Location Tracking, ACLU Case Page, https://www.aclu.org/cases/foia-request-justice-department-policy-memos-gps-location-tracking; Florida Stingray FOIA, ACLU Case Page, https://www.aclu.org/cases/florida-stingray foia; Nathan Freed Wessler, *ACLU-Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida*, (Feb. 22, 2015) https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida?redirect=blog/    national-security-technology-and-liberty/aclu-obtained-documents-reveal-breadth-secretive-sting.

125 Broad Street, Floor 18, New York, NY 10004 | tlee@aclu.org | (212) 549-2500



breaking news stories published daily, including about USDS access to sensitive information.[23] USDS access to sensitive data and the March 25, 2025 Executive Order have both been the subject of multiple lawsuits filed since January 20,[24] and members of Congress have urgently raised alarms.[25] The records sought relate to a matter of widespread and exceptional public and media interest in the access USDS has to sensitive information.

The urgency and importance of this request are enhanced in light of the statements made by those entrusted with some of the most sensitive, personal records at issue in the Request about their cooperation with USDS outside of ordinary processes and chains of command. For example, Leland Dudek, who served as Acting Commissioner of the Social Security Administration during much of the relevant period, has "confess[ed]" that he has "bullied agency executives, shared executive contact

---

[23] *See, e.g.*, Isaac Stanley-Becker, et al., *Musk's DOGE Agents Access Sensitive Personnel Data, Alarming Security Officials*, Wash. Post (Feb. 6, 2025), https://perma.cc/A7W5-7BBP; *Inside Musk's Aggressive Incursion Into the Federal Government*, N.Y. Times (Feb. 3, 2025), https://www.nytimes.com/2025/02/03/us/ politics/musk-federal-government.html; Andrew Duehren, et al., *Elon Musk's Team Now Has Access to Treasury's Payments System*, N.Y. Times (Feb. 1, 2025), https://perma.cc/R9RN-DEFE; Vittoria Elliott, et al., *A 25-Year-Old With Elon Musk Ties Has Direct Access to the Federal Payment System*, WIRED (Feb. 4, 2025), https://perma.cc/LB74-HWC9; Lauren Irwin, *Senate Democrat: DOGE Has 'Burrowed Into the Private Information of Every American*,' The Hill (Feb. 6, 2025), https://perma.cc/NPS9-SLDK; *Musk's DOGE Granted Access to US Medicare and Medicaid Systems*, Reuters (Feb. 5, 2025), https://perma.cc/36N8-TPAB; Vittoria Elliott, *DOGE Will Allow Elon Musk to Surveil the US Government From the Inside*, WIRED (Jan. 24, 2025), https://www.wired.com/story/doge-elon-musk/.

[24] *See, e.g.*, *Alliance for Retired Americans v. Bessent*, No. 25-313 (D.D.C. filed Feb. 3, 2025); Hurubie Meko, *State Attorneys General to Sue Over Musk's Access to Government Systems*, N.Y. Times (Feb. 6, 2025), https://www.nytimes.com/ 2025/02/06/nyregion/letitia-james-doge-suit.html; *League of United Latin American Citizens v. Executive Office of the President*, No. 25-cv-0946 (D.D.C. filed Mar. 31, 2025); *League of Women Voters Education Fund v. Trump*, No. 25-cv-955 (D.D.C. filed Apr. 1, 2025).

[25] *See, e.g.*, Letter from Sen. Mark R. Warner et al. to Susie Wiles, White House Chief of Staff (Feb. 5, 2025), https://www.kelly.senate.gov/wp-content/uploads/ 2025/02/DOGE-Letter.pdf.

125 Broad Street, Floor 18, New York, NY 10004 | tlee@aclu.org | (212) 549-2500



information, and circumvented the chain of command to connect DOGE with the people who get stuff done."[26]

This request is time-sensitive and highly important to the public for yet another reason: the revised SAVE database has already been shared with and is in use by states, meaning the use of this sensitive data (and the consequent impact on registered voters) is imminent if not already ongoing.

In spite of the extraordinary public interest in the activities of USDS, USDS and other federal agencies have released little information about what access to sensitive data has been granted and with what protections, if any. Given the extraordinary interest and the lack of public information, there is an urgent need to inform the public about the use of sensitive information held by government agencies. An extraordinary debate about unprecedented activity within federal agencies is happening now, and accurate public information about agency activities is urgently needed to inform that debate. Expedited processing is therefore appropriate under 5 U.S.C. § 552(a)(6)(E) and the Agency's implementing regulations.

## IV.    Fee Waiver Request

We also request that any fees associated with responding to this FOIA request be waived pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 15 C.F.R. § 4.11(l). Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 15 C.F.R. § 4.11(l), fees should be waived or reduced if disclosure is (1) in the public interest because it is "likely to contribute significantly to public understanding of the operations or activities of the government" and (2) "not primarily in the commercial interest of the requester." Disclosure in this case meets both of these factors. We also separately request a waiver or reduction of fees on the grounds that Requesters qualify as "representative[s] of the news media" and the records are not sought for commercial use. *See* 5 U.S.C. § 552(a)(4)(A)(ii)(II); 15 C.F.R. § 4.11(d)(1).

---

[26] Letter from Sen. E. Warren to L. Dudek (Mar. 2, 2025), https://www.warren.senate.gov/imo/media/doc/letter_to_ssa_re_doge_data_access.pdf; see also @elonmusk, X (Feb. 19, 2025 at 10:18pm), https://perma.cc/56BW-MUBB.

11



1. *Disclosure is in the public interest as it is likely to contribute significantly to the public's understanding of the operations and activities of government and is not primarily in a commercial interest.*

As discussed above, this Request concerns serious questions surrounding the extraordinary access to sensitive agency records. Little official information is publicly available regarding this topic, so the records sought are certain to contribute significantly to the public's understanding.

We are not filing this Request to further any commercial interests, but to provide information to the public. As described above, any information disclosed as a result of this FOIA Request will be available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (quotation marks omitted)).

2. *Ms. Bower, Mr. Wittes, and the ACLU are representatives of the news media and the records are not sought for commercial use.*

As journalists, Ms. Bower and Mr. Wittes qualify as "representative[s] of the news media"; likewise, the ACLU qualifies as "representative[s] of the news media." 5 U.S.C. § 552(a)(4)(A)(ii)(II). And the records are not sought for commercial use. *Id.* Each of the Requesters meet the statutory and regulatory definitions of a "representative of the news media" because they "gather[] information of potential interest to a segment of the public, uses [their] editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III); *see also Nat'l Sec. Archive v. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *Serv. Women's Action Network v. Dep't of Defense*, 888 F. Supp. 2d 282 (D. Conn. 2012) (requesters were representatives of the news media and thus qualified for fee waivers for FOIA requests to the Department of Defense and Department of Veterans Affairs).

Ms. Bower and Mr. Wittes are plainly "representative[s] of the news media" for the same reasons they are "primarily engaged in the dissemination of information." Furthermore, courts have routinely found journalists and other individuals who gather and disseminate information to be "representatives of the news media." *See,*

12



*e.g.*, *Liberman v. U.S. Dep't of Transportation*, 227 F. Supp. 3d 1, 11 (D.D.C. 2016) (holding that blog contributor was a "representative of the news media" entitled to FOIA fee waiver); *Long v. Dep't of Homeland Sec.*, 113 F. Supp. 3d 100, 106 (D.D.C. 2015) (determining professor who publishes reports through research institute was a "representative of the news media" and entitled to waiver). Similarly, the ACLU is a "representative of the news media" since it regularly "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." *ACLU of Wash. v. Dep't of Justice*, No. C09–0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding that the ACLU of Washington is an entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience"); *ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004). As was true in those instances, each of the Requesters meet the requirements for a fee waiver here.

Furthermore, courts have routinely found other organizations whose mission, function, publishing, and public education activities are similar in kind to the ACLU's to be "representatives of the news media." *See, e.g.*, *Cause of Action v. IRS*, 125 F. Supp. 3d 145 (D.C. Cir. 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. Dep't of Justice*, 133 F. Supp. 2d 52, 53-54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).

"[T]he D.C. Circuit has made clear that news-media entities that are seeking information in service of their basic function—disseminating information to the public—are eligible for the fee waiver because public dissemination is not a 'commercial use' of the requested records." *Liberman*, 227 F. Supp. 3d at 14. As such, in addition to being entitled to a fee waiver because disclosure is in the public interest, the Requesters are also entitled to a fee waiver as representatives of the news media.

\*     \*     \*

Pursuant to applicable statutes and regulations, we expect a determination regarding expedited processing within 10 days. *See* 5 U.S.C. § 552(a)(6)(E)(ii).

If the Request is denied in whole or in part, we ask that you justify all deletions by reference to specific exemptions to FOIA. We expect the release of all segregable

125 Broad Street, Floor 18, New York, NY 10004 | tlee@aclu.org | (212) 549-2500



portions of otherwise exempt material. We reserve the right to appeal a decision to withhold any information or deny a waiver of fees.

Thank you for your prompt attention to this matter.

Please call me at (212) 549-2500, (646) 905-8881, or email me at tlee@aclu.org if you have any questions or wish to obtain further information about the nature of the records in which we are interested. Please furnish the applicable records via email (tlee@aclu.org).

If the records are not in an electronic format, and must be sent via U.S. Mail, please furnish the applicable records to:

>    Theresa J. Lee
>    American Civil Liberties Union Foundation
>    125 Broad Street, 18th Floor
>    New York, New York 10004

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi); 15 C.F.R. § 4.6(f)(3).

Sincerely,

Theresa J. Lee
Megan C. Keenan
Sophia Lin Lakin
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2500
tlee@aclu.org

14